```
               IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF KANSAS


KIMBERLY B. ALDERFER,            )
                                 )
                    Plaintiff,   )    CIVIL ACTION
                                 )
v.                               )    No. 05-1084-MLB
                                 )
THE BOARD OF TRUSTEES OF THE     )
EDWARDS COUNTY HOSPITAL AND      )
HEALTHCARE CENTER,               )
                                 )
                    Defendant.   )
                                 )
```

## MEMORANDUM AND ORDER

Before the court are the following:

1. Plaintiff's Motion for Partial Summary Judgment on defendant's affirmative defense of failure to mitigate damages (Doc. 90);

2. Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 105);

3. Plaintiff's Reply Memorandum to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 109);

4. Defendant's Motion for Summary Judgment (Doc. 95);

5. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 107);

6. Defendant's Reply to Plaintiff's Response to its Motion for Summary Judgment (Doc. 116);

7. Plaintiff's Motion to Strike sections of defendant's memorandum supporting its motion for summary judgment (Doc. 106);

8. Defendant's Response in Opposition to Plaintiff's Motion to

      Strike (Doc. 117).

Defendant's motion is GRANTED, and plaintiff's motions are DENIED for the reasons set forth herein.

## I. FACTS

The following facts are uncontested. Plaintiff Kimberly Alderfer was employed by defendant Board of Trustees of the Edwards County Hospital and Healthcare Center ("Board") as business manager on July 15, 1996. In August 1998, plaintiff became the business manager/administrator for the hospital and signed an employment agreement for a two-year term. In this capacity, plaintiff reported directly to the Board. In August 2000, September 2001, and September 2002, plaintiff and the Board entered into consecutive written employment agreements, each with a one-year term.

The September 2002 employment agreement included the following:

> This agreement, dated the 28 day of September 2002 between the Board of Trustees of the Edwards County Hospital, hereinafter referred to as the EMPLOYER and Kim Alderfer, hereinafter referred to as the ADMINISTRATOR.
>
> 1. EMPLOYMENT: The EMPLOYER employs the ADMINISTRATOR and the ADMINISTRATOR accepts employment upon the terms and conditions of this agreement.
>
> 2. TERM: The term of this agreement shall be for (1) year and shall be reviewed annually following the annual performance appraisal of the ADMINISTRATOR.
>
> 3. COMPENSATION: The EMPLOYER shall pay the ADMINISTRATOR for all services rendered a salary of $67,000 a year, payable in twenty-six equal installments pursuant to the regularly scheduled payroll of the hospital. EMPLOYER will do a performance review each year and decide upon salary adjustments if warranted. Salary payments shall be subject to withholding and other applicable taxes.

(Doc. 95, exh. D). The agreement also included paragraphs describing plaintiff's duties, expenses, vacation, other benefits and sick leave.

On October 22, 2004, one year after the 2002 agreement ended (two years after it was entered into), plaintiff was given an annual performance evaluation and granted a Board approved raise. Plaintiff was terminated fifteen weeks later, on February 4, 2005. The Board conducted a regularly scheduled board meeting, at which plaintiff was in attendance, and then conducted an executive session outside of plaintiff's presence. Immediately after the executive session, plaintiff was notified of the Board's decision and given ten minutes to decide whether to resign or be terminated. Plaintiff was given no written reprimands or other written notice of any proposed disciplinary action against her. Personnel policies and procedures in effect during the course of plaintiff's employment provided that employees could be terminated for cause.

Plaintiff filed suit alleging breach of contract and violation of due process. Defendant responds that plaintiff was an at-will employee[1] and had no property interest in continued employment giving rise to a due process claim. In the alternative, defendant alleges it complied with its personnel policies and terminated plaintiff's employment for cause. Defendant also alleges plaintiff failed to mitigate damages.

---

[1] Defendant specifically alleges plaintiff, as a public employee, could not have entered into an employment contract for a fixed term with the Board as the Board is precluded from entering such contracts. Alternatively, defendant alleges, even if the Board could enter into such a contract, it did not do so expressly or impliedly.

**II. MOTION FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

In support of a motion for summary judgment, the parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. See Adams v. Am. Guarantee and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). Plaintiff moves to strike sections of defendant's motion for summary judgment upon a general allegation that the sections are

-4-

"inadmissible hearsay."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Thus, a statement is not hearsay when it is not offered "to prove the truth of the matter asserted." Id. As the parties well know, statements that do meet the definition of hearsay are generally not admissible as evidence. See Fed. R. Evid. 801. However, Rule 801(d)(2) provides that a statement is not hearsay when "[t]he statement is offered against a party and is . . . the party's own statement."

The sections designated in plaintiff's motion to strike deal with complaints received by the Board. These non-party statements are being used to show merely that the Board received complaints, not that the substance of the things complained was, in fact, true. Defendant does not offer the substance of the non-party complaints in its memorandum to argue cause existed for the firing of plaintiff; rather defendant relies on admissions-statements made by plaintiff-to support its allegation that cause did exist to terminate plaintiff's employment.

Each of the five sections designated by plaintiff are either not hearsay because they are not offered by defendant in its memorandum to prove the truth of the matter asserted or are admissible hearsay because they are offered as admissions by a party opponent. In addition, because the court is making its ruling on these motions for summary judgment based on legal, rather than factual bases, plaintiff's motion is moot. Plaintiff's motion to strike is denied.

**III. ANALYSIS**

Defendant moves for summary judgment, claiming there is no legal or factual basis for either plaintiff's breach of contract claim or due process claim. Plaintiff responds there are multiple disputes of fact that must be resolved by a jury.

**A. Breach of Contract**

Plaintiff alleges defendant breached an express contract for employment by firing plaintiff without cause on February 4, 2005. Defendant's response is that the Board had no authority to enter into an employment contract for a fixed term and any such contract is void.

Any contract created by a government agency[2] that extends beyond the agency's powers is considered void and unenforceable. See Gragg v. U.S.D. No. 287, 6 Kan. App. 2d. 152, 155, 627 P.2d 335, 339 (1981). The central issue is whether the Board had the authority to enter into

---

[2] Neither party has cited authority supporting or denying that the Board is, in fact, a government agency. Additionally, neither party has addressed the statutory sections nor the local ordinances under which the Edwards County Hospital and Healthcare Center is organized and pursuant to which the Board derives its operating power.
  Section 12-105a of the Kansas statutes defines municipality (for subsequent statutory sections outlining notice requirements for claims against municipalities) to include a "hospital board of trustees having power to create indebtedness" to the hospital. The Hospital and Related Facilities Act grants boards appointed under its sections the power to, among other things, contract for real estate and manage finances. K.S.A. § 19-4610. Assuming the Edwards County Hospital and Healthcare Center is organized pursuant to this Act, then the Board would meet the definition of municipality found in section 12-105a. See also Smith v. Kennedy, 26 Kan. App. 2d 351, 354, 985 P.2d 715, 718 (1999) (discussing the applicability of the Kansas notice statutes to the board of trustees of a hospital organized pursuant to section 19-4605 (the Hospital and Related Facilities Act)).
  Both parties presume without arguing that the Edwards County Hospital and Healthcare Center and its board of trustees are governed by the Hospital and Related Facilities Act and that the Board is a municipal corporation. Because there is legal support for this position, the court will proceed in its discussion of the contracting authority of such a municipal corporation.

-6-

employment contracts with plaintiff for fixed terms.  Under Kansas law, hospital boards are governed, in part, by K.S.A. § 19-4610(a), which gives a hospital's board of directors authority to "appoint an administrator, to fix the compensation thereof, and to remove such administrator."  Under Kansas law, "a public employee serves at the will of his or her employer unless that employer is specifically empowered to contract for employment on other terms."  <u>Wiggins v. Hous. Auth. of Kansas City</u>, 22 Kan. App. 2d. 367, 372, 916 P.2d 718, 722 (1996).  This power can either be specifically granted or necessarily implied.  <u>See</u> <u>id.</u>

The statute does not specifically grant a hospital board the power to enter into a written contract for a fixed term.  The words "appoint," "fix" and "remove" cannot be read to authorize an express, written contract.  The issue is whether this power is necessarily implied. An argument can be made that it is.  Hospital boards are one of the few government agencies that are exempt from Kansas' cash-basis law.  K.S.A. § 19-4611(h).  Hospital boards are exempt so that they can enter into long-term contracts; in fact, they are specifically allowed to do so for real estate and maintenance.  K.S.A. § 19-4611. However, there are no Kansas decisions which hold that a hospital board may enter into written employment contracts.  The commentary following K.S.A. § 19-4610 purports to cite an Attorney General's Opinion, No. 99-46, for the proposition that a ". . . hospital board may contract with hospital administrator."  Such language cannot be found in the opinion.

Kansas cases appear to support the proposition that hospital boards cannot enter fixed-term contracts for employment.  In <u>Wiggins</u>

v. Hous. Auth. of Kansas City, 22 Kan. App. 2d 367, 916 P.2d 718 (1996), two employees brought wrongful termination claims against their employer, the Housing Authority of Kansas City.  The Kansas statute authorizing the creation of a housing authority by cities gives the city the power to create a housing authority that could "employ an executive director, technical experts and such other officers, agents and employees, permanent and temporary, as it may require."  Id. at 369; 916 P.2d at 720.  The city ordinance creating the Housing Authority of Kansas City specifically authorizes the Housing Authority to "employ . . . agents and employees . . . as such authority may require."  Id.

The court found that this language gave the Housing Authority the power to hire, but not the power to contract for employment for a specified tenure.  Id. at 372; 916 P.2d at 722.  The court observed that the Housing Authority was an agency of the city and the city was a "creature of the legislature" with "only such powers as are conferred by law or as may necessarily be implied to give effect to powers specifically granted."  Id. at 370; 916 P.2d at 720.  The court further noted a line of Kansas cases establishing that "[a] municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations."[3]  Id.  Not only do

---

[3] The court is troubled by this language.  Where, as here, an employee is presented a written employment contract by a government employer, it is entirely reasonable, in a real-world scenario, for that employee to assume that the employer has the authority to enter into the contract.  The employee would have no reason to know his employer's "limitations."  While this may be the law in Kansas which this court must apply in this case, the court wonders whether the onus should be on the government employer to place a warning on the

-8-

Kansas courts consider void any contracts entered into beyond the scope of a municipal corporations statutory authorization, they also resolve "any reasonable doubt as to the existence of a particular power against its existence." Id. at 370; 916 P.2d at 721. The court went on to discuss whether the power was "necessarily implied" and found that it was not. The court based its decision on several points of law. Because of the strong presumption of at-will employment in Kansas, and previous Kansas cases that have established that a public employee serves at the will of the employer unless that employer is specifically empowered to contract employment on other terms, the court observed it would require an intent by the Kansas legislature to change the "generally accepted rule" of at-will employment before finding that the power to contract for a specified term was necessarily implied. Id. at 372; 916 P.2d at 722. Additionally, to find that the power to contract tenured employment was necessarily implied, the Kansas court looked for evidence that a municipal corporation "cannot function and carry out its duties under the employment-at-will doctrine" and that "it would have to be demonstrated that that power is necessary in order to effectuate the power specifically granted." Id. The court ultimately affirmed the grant of summary judgment against the employees. Id. at 373; 916 P.2d at 723.

Federal cases have resolved the issue similarly. See Warren v. City of Junction City, Kan., 176 F.Supp.2d 1118, 1125-26 (D. Kan. 2001) (holding that Kansas law precludes finding an implied contract

---

contract that it is without authority to enter into the contract and that the employee must not rely on the contract.

-9-

between a municipal corporation and its employee and further noting that the <u>Wiggins</u> holding "applies to all public employees regardless of the governing statute"); <u>Cragg v. City of Osawatomie, Kan.</u>, No. 95-2492-JWL, 1996 WL 707108 at *6 (D. Kan. Nov. 8, 1996), <u>partially rev'd on other grounds</u>, 143 F.3d 1343 (10th Cir. 1998) (holding that Kansas law forbade finding a contract, implied or written, for employment for a fixed term from a municipal corporation); <u>Dehart v. City of Manhattan, Kan.</u>, 942 F. Supp. 1395, 1398-1401 (D. Kan. 1996) (addressing reservations about <u>Wiggins</u> and the cases it builds upon but applying the Kansas precedent).

In this case, there is also a set of Kansas statutes giving county governments the authority and procedures for establishing a municipal corporation; here, a county hospital with a board of directors. The Hospital and Related Facilities Act grants a board the power to hire, but not to hire for a fixed term. <u>See</u> K.S.A. § 19-4610(a). This power is also not "necessarily implied" because there is no evidence presented of a "strong intent" to change the generally accepted rule of at-will employment. The express removal of a hospital board of trustees from Kansas' cash-basis law does not show a "strong intent" as to <u>employment</u> contracts. It also has not been shown that the power to contract for a fixed term is necessary for the Board to function and carry out its duties. A finding that the power to contract for a fixed term is a necessarily implied power of the municipal corporation is a heavy burden to meet according to controlling Kansas case authority, and it has not been met here. Federal courts must follow state court precedent when it has statewide jurisdiction and binding effect upon district courts of that state.

Gooding v. Wilson, 405 U.S. 518, 525 n.3 (1971) (citations omitted). Thus, the Wiggins holding controls.

Plaintiff tries to distinguish Wiggins by noting 1) the Board is "expressly empowered to enter into contracts for management" and 2) an express contract is alleged by plaintiff in addition to an implied contract and thus the Wiggins holding does not control. The court is not persuaded. The Housing Authority in Wiggins had also been given the express power to hire employees and the court did not base its decision on whether an express or implied contract was being asserted but rather on whether the Housing Authority had any power to contract for a fixed term.

Plaintiff next argues, apparently in reply to the Wiggins court's directive that a public employee must show clear intent to change the generally accepted rule of employment at will, that a Kansas Supreme Court case, Foote v. Community Hosp. of Beloit, 195 Kan. 385, 405 P.2d 423 (1965), and Kansas statute, K.S.A. § 65-431, show that Kansas law does give boards of trustees expansive power to contract with an administrator for a fixed term. In Foote, a physician sought admittance to the medical staff of a county hospital and was ultimately denied admittance by the board of trustees of the hospital. 195 Kan. at 387; 405 P.2d at 424-25. The court relied on K.S.A. § 65-431 when it noted that the board of trustees has "plenary power to select its professional staff and the state has expressed a policy not to interfere with that selection." Id. at 387; 405 P.2d at 425 (emphasis added). Section 65-431(b) states, in pertinent part:

> Boards of trustees or directors of facilities licensed pursuant to the provisions of [the statutes governing licensing of Kansas hospitals] shall have the right, in

-11-

>     accordance with law, to select the professional staff
>     members of such facilities and to select and employ
>     interns, nurses and other personnel, and no rules and
>     regulations or standards of the licensing agency shall be
>     valid which, if enforced, would interfere in such selection
>     or employment.

Plaintiff relies on the above to assert that the Board has more power than the Housing Authority in <u>Wiggins</u> with regard to hiring. Plaintiff has failed to distinguish, however, that the term "professional staff," as used in the statute, is a term of art referring to a hospital's clinical staff, not administration. And, once again, the words "select" and "employ" are not synonymous with "contract." Section 65-431 and <u>Foote</u> are simply not applicable to the ultimate question of whether the Board, as a municipal corporation, has the necessarily implied power to enter fixed-term employment contracts.

Section 19-4611, cited by plaintiff, also does not clearly establish an intent by the Kansas legislature to change the generally accepted rule of employment at will. Section 19-4611(d) states: "The board may contract for the management of any hospital with any person, corporation, society or association upon such terms and conditions as deemed necessary by the board." As recognized by the Kansas Supreme Court in <u>Memorial Hosp. Ass'n v. Knutson</u>, 239 Kan. 663, 671, 722 P.2d 1093, 1100 (1986), this statutory subsection references the practice of a board of trustees contracting with a management association to take complete control over a county hospital; the section does not imply any intent by the Kansas legislature to permit employment contracts for fixed terms.

At the summary judgment stage, defendant has the burden to show

-12-

that it is entitled to judgment as a matter of law. See Adler, 144 F.3d at 670 (holding that the defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law). Defendant is entitled to judgment as a matter of law on the initial, and controlling, issue of whether the Board has the power to contract for a fixed term. Because the Board does not have this power, plaintiff was, by default, an employee at-will and her employment could be terminated for any reason, at any time. See Ortega v. IBP, Inc., 255 Kan. 513, 516 (1994). If there was an express contract, it was made without authority and was void; obviously an implied contract could not have been made either.

The factual issues in this case are certainly contested. However, because defendant is entitled to judgment as a matter of law on the legal issue discussed herein, defendant's motion for summary judgment on plaintiff's breach of contract claim must be granted.

**B. Due Process**

The Fourteenth Amendment prohibits a state from depriving a person of a protected property interest without due process of law. Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). In the employment context, a property interest is defined as a legitimate expectation in continued employment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577-78 (1972). Property interests are created and defined by state law. Id. Thus, because Kansas law precludes finding an employment contract, plaintiff's due process claim must also fail.

**IV. CONCLUSION**

Plaintiff's motion to strike (Doc. 106) is DENIED. Defendant's

motion for summary judgment (Doc. 95) is GRANTED.  Plaintiff's motion for partial summary judgment (Doc. 90) has been rendered moot and is therefore DENIED.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  31st  </u> day of August 2006, at Wichita, Kansas.

<u>S/ Monti Belot            </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE